PEARSON, MJ.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| JOSE AGUIRRE, | ) | CASE NO. 4:08 CV 2365 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | JUDGE  ECONOMUS |
|  | ) |  |
| v. | ) |  |
|  | ) | MAGISTRATE JUDGE PEARSON |
|  | ) |  |
| CORRECTIONS CORPORATION OF | ) |  |
| AMERICA, et al., | ) |  |
|  | ) |  |
| Defendants. | ) | **REPORT AND RECOMMENDATION** |
|  | ) |  |

### Introduction

Before the Court is "Defendants' Motion to Dismiss Plaintiff's Second Amended

Complaint" pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 15. All named

Defendants sought the dismissal of Plaintiff Jose Aguirre's Complaint for failure to properly

exhaust all administrative remedies available to him; thereby, failing to state a claim for which

relief can be granted.[1] *See* ECF No. 15. Aguirre responded that the motion was "Baseless." *See*

ECF No. 18.

---

[1] The Court assumes that the motion to dismiss was filed on behalf of *all* defendants, including those against whom Aguirre's original complaint had already been dismissed (ECF No. 8), out of an abundance of caution because at the time of the filing, Aguirre's Motion to Alter or Amend Judgment (ECF No. 12) was pending. Because all defendants other than Chaplain Zeyer and all allegations other than Aguirre's First Amendment claim against Chaplain Zeyer were dismissed  (ECF No. 8) and the Court's ruling on the motion to Alter or Amend Judgment reinforced that ruling, the undersigned will make a recommendation as to the dismissal of the only remaining claim against the only remaining defendant, *i.e.*, the First Amendment claim against Chaplain Zeyer.

(4:08 CV 2365)

After reviewing Defendant's motion, Aguirre's reply, and applicable law, the Court

recommends: (1) *sua sponte* converting Defendant's Rule 12(b)(6) motion into a motion for

summary judgment pursuant to Federal Rule of Civil Procedure 12(d), (2) granting the motion

for summary judgment, and (3) dismissing the sole remaining cause of action in Plaintiff's

Second Amended Complaint with prejudice.

## I.  Factual and Procedural History

On October 6, 2008, *pro se* Plaintiff Jose Aguirre filed a civil rights action against

Defendants C.C.A., Warden Joseph Gunja, and Chaplain William Zeyer alleging the denial of his

freedom of religion and intentional infliction of emotional distress and seeking a declaratory

judgment.  ECF No. 1.  Specifically, Aguirre, an inmate at Northeast Ohio Corrections Center (a

privately owned facility), asserted that the defendants denied him his right to practice his

religious beliefs by not allowing him to participate in the kosher meal program.  ECF No. 1 at 1.

Contemporaneously, Aguirre filed a motion to proceed *in forma pauperis*.  ECF No. 2.  Aguirre

also filed an Amended Complaint and a Second Amended Complaint on November 4 and

November 6, 2008, respectively.  ECF Nos. 5 & 6.

On December 30, 2008, the Court granted Aguirre's motion to proceed *in forma pauperis*

(ECF No. 7) and dismissed *sua sponte* (ECF No. 8) Aguirre's claims against Defendants C.C.A.

and Warden Joseph Gunja pursuant to 28 U.S.C. § 1915e(c) which states, "[t]he court shall on its

own motion or on the motion of a party dismiss any action if the court is satisfied that the action

. . . fails to state a claim on which relief may be granted . . . ."  The Court reasoned that Sixth

Circuit law required that Aguirre "must show that the supervisors somehow encouraged or

(4:08 CV 2365)

condoned the actions of their employees." ECF No. 8 at 3 (internal citations omitted).  After a review of the pleadings, the Court found that there were "no allegations in the complaint which suggest that these defendants [C.C.A. and Joseph Gunja] played any role in the decision to deny kosher food to the plaintiff." ECF No. 8 at 3.

On January 22, 2009, Aguirre filed a *pro se* Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e), asking the Court to set aside its ruling dismissing Aguirre's claims against Defendants Corrections Corporation of America and Warden Joseph Gunja and reiterating his First Amendment claim against Defendant William Zeyer, Chaplain.  ECF No. 12.  On March 6, 2009, all Defendants moved to dismiss Aguirre's Second Amended Complaint for failure "to properly exhaust all administrative remedies available to him."  ECF No. 15.  On March 18, 2009, the Court denied Aguirre's motion to set aside the Court's ruling for failure to "satisfy the circumstances established by Sixth Circuit law under which a court may grant such a motion." ECF No. 19 at 4.   Thus, the only matter pending before the Court is Aguirre's First Amendment claim against Chaplain Zeyer.

The undersigned held a Case Management Conference ("CMC") on April 16, 2009, which counsel for Chaplain Zeyer and Aguirre, *pro se*, attended via telephone.  Well before the conference, both Aguirre and Chaplain Zeyer had filed responsive pleadings.  *See* ECF Nos. 18 & 20.  Each party attached affidavits ("declarations"), copies of grievance forms and other records maintained by the prison and relevant to Aguirre's "exhaustion of administrative remedies" to those responsive pleadings.  Specifically, Aguirre submitted and relied upon the following attachments to his brief in opposition (ECF No. 18) to the motion to dismiss:

(4:08 CV 2365)

    1.  Declaration of Jose Aguirre;

    2.  Declaration of Felix Fermin;

    3.  Copy of First Amended Complaint with the following attached "Exhibits":

        a. Inmate Request to Staff Member, dated July 9, 2008 (Ex. A);

        b. CCA Inmate/resident Grievance Form, dated July 22, 2008 (Ex. B);

        c. Rejection Notice - Administrative Remedy, dated Aug. 26, 2008 (Ex. C);

        d. Inmate Request to Staff Member, dated Sept. 25, 2008 (Ex. D);

        e. Inmate Request to Staff Member, dated Jan. 1, 2009 (Ex. E).

Therefore, the undersigned had the benefit of these submissions in addition to the pleadings prior to the CMC and was able to question both parties about them during the telephonic CMC.

## II.  Law

### A.  *Sua Sponte* Conversion of the R. 12(b)(6) Motion to a R. 56(c) Motion for Summary Judgment

For the following reasons, the undersigned recommends that the Court treat the pending motion to dismiss as a motion for summary judgment.  First, the ground for the dismissal – failure to exhaust administrative remedies – does not fall under one of the seven defenses enumerated by Rule 12(b)(6).  Lastly, both Chaplain Zeyer and Aguirre rely on evidence outside of the complaint that has not been excluded by the Court, taking the motion even further outside of the bounds of Rule 12(b)(6).

### 1.  Failure to Exhaust as a Ground for Dismissal Under R. 12(b)(6)

Without question, an inmate is required to exhaust all administrative remedies before

(4:08 CV 2365)

filing a lawsuit charging a violation of civil rights pursuant to 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a). The inmate is not, however, required to plead exhaustion. *Jones v. Bock*, 549 U.S. 199 (2007) (holding that an inmate is not required to specially plead or demonstrate exhaustion in his civil rights complaint). Rather, exhaustion is an affirmative defense that the defendant bears the burden of raising and proving. *Roberts v. Barreras*, 484 F.3d 1236 (10th Cir. 2007).

While not a proper ground for a 12(b) dismissal, failure to exhaust does justify a procedural dismissal. Rule 56(c) permits the dismissal of an action when "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In a case such as this, a court is well within its purview to find that no genuine issue of material fact exists as to the inmate's failure to fulfill a procedural requirement such as the exhaustion of administrative remedies. *See* *Benavidez v. Stansberry*, 2008 WL 4279559 (N.D. Ohio Sept. 12, 2008). As the parties have obviously anticipated by the submission of the documents regarding Aguirre's compliance with administrative remedies, *i.e.*, "exhaustion," the resolution of this procedural issue directly depends upon evidence beyond that on the face of the complaint.

### 2.     Reliance on Extrinsic Evidence

When a motion to dismiss under Rule 12(b)(6) is founded on matters outside of or "extrinsic to" the pleadings, the trial court is obligated "to treat the motion to dismiss as one for summary judgment and to dispose of it as provided in Rule 56." *Carter v. Stanton*, 405 U.S. 669, 671 (1972) (*per curium*); *see also* *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir.2003). Rule 12(d) of the Federal Rules of Civil Procedure, however, provides in pertinent

(4:08 CV 2365)

part:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

### 3.    Notice of the Conversion

When the Court treats a motion to dismiss as one for summary judgment, all parties must be given the opportunity to present evidence pertinent to the motion.  *See* Fed. R. Civ. P. 12(d). To ensure the plaintiff is given such an opportunity, the court typically notifies the parties of the court's intent to treat the motion as one for summary judgment.  The Court may, however, grant summary judgment *sua sponte* without providing further notice to the plaintiff.  *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir.1998).  "The key inquiry is whether the losing party was on notice that he had to muster the necessary facts to withstand summary judgment, lest he face the dismissal of his claims."  *Excel Energy, Inc. v. Cannelton Sales Co.*, 246 Fed.Appx. 953, 959-60 (6th Cir. 2007) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *Bennett v. City of Eastpointe*, 410 F.3d 810, 816 (6th Cir. 2005)).

In the instant case, Defendant asserted the affirmative defense that Aguirre failed to exhaust his administrative remedies and attached extrinsic material as exhibits to his motion to dismiss.  In response to Defendant's arguments and exhibits, Aguirre attached exhibits extrinsic to his pleadings.  Defendant then filed a reply to Aguirre's response and attached additional extrinsic material.  Consequently, both parties have comprehensively addressed Defendant's affirmative defense of failure to exhaust administrative remedies.  Because Aguirre's brief contains and relies upon voluntarily provided extrinsic evidence, the Court finds that Aguirre had

-6-

(4:08 CV 2365)

sufficient notice that the Court could consider this outside material when ruling on the issues

presented in the motion to dismiss and could convert that motion into a motion for summary

judgment under Federal Rule of Civil Procedure 12(d).  *See e.g.*, *Benavidez v. Stansberry*, 2008

WL 4279559 at \*8.

      **B.**    **Summary Judgment Standard**

Summary judgment is appropriate where there are no genuine issues of material fact and

the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  When

considering a motion for summary judgment, "the inferences to be drawn from the underlying

facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions]

must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold,*

*Inc.*, 369 U.S. 654, 655 (1962).  However, the adverse party "may not rest upon mere allegation

or denials of his pleading, but must set forth specific facts showing that there is a genuine issue

for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Rule 56 requires the nonmoving party who has the burden of proof at trial to oppose a

proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule

56(c), except the mere pleadings themselves[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324

(1986).  General averments or conclusory allegations of an affidavit do not create specific fact

disputes for summary judgment purposes. *See Lujan v. National Wildlife Federation*, 497 U.S.

871, 888-89 (1990).  Nor may a party "create a factual issue by filing an affidavit, after a motion

for summary judgment has been made, which contradicts . . . earlier deposition testimony." *Reid*

*v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (*citing Biechell v. Cedar Point, Inc.*,

-7-

(4:08 CV 2365)

747 F.2d 209, 215 (6th Cir. 1984)); *but see Baer v. Chase*, 392 F.3d 609, 623-26 (3d Cir. 2004)

(noting that a so-called "sham" affidavit need not be disregarded if there is "independent

evidence in the record to bolster [the] otherwise questionable affidavit").  Further, "'[t]he mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff.'"  *Street v. J.C.*

*Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (*quoting Anderson v. Liberty Lobby*, 477

U.S. at 252).

      In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is

the need for a trial – whether, in other words, there are genuine factual issues that properly

can be resolved only by a finder of fact because they may reasonably be resolved in favor of

either party."  *Anderson v. Liberty Lobby*, 477 U.S. at 250.  Put another way, this Court must

determine "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id*. at 251-52;

*see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he

conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material

fact that preclude the grant of summary judgment").

## III.  Analysis

      As Chaplain Zeyer aptly stated, Aguirre's "Second Amended Complaint revolves around

a simple issue – his inability to participate in the Kosher meal program and Jewish holidays

despite having changed his religious preference from Catholic to Jewish."  ECF No. 15 at 7.  The

only claim left to be resolved is Aguirre's first cause of action alleging that Chaplain Zeyer

(4:08 CV 2365)

violated his First Amendment right to the free exercise of religion.  *See* ECF No. 6.

There is no dispute that Aguirre changed his religious preference.  The crux of the matter, which the Court finds to be based upon both mis-communication[2] and misconstrued expectations, is that when Aguirre changed his religious preference, he expected automatic participation in the kosher meal program.  The two events – change of religious preference and kosher meal participation — appear to be mutually exclusive rights within the prison's system of rules.  As a result, Aguirre's requests and grievance forms failed to fully exhaust his administrative remedies.

### A.    Exhaustion Requirements and the Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") states in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement of the PLRA "applies to prisoners held in private facilities."  *Boyd v. Corrections Corp. of America, et al.*, 380 F3d. 989, 994 (6th Cir. 2004).  Thus, for a prisoner to exhaust all

---

[2]  After Aguirre's request to change his religious status had been approved by Chaplain Zeyer on July 9, 2008, Aguirre later submitted two written requests to participate in Rosh Hashanah, a Jewish holiday.  *See* ECF No. 18, Ex. D at 16-17.  On September 25, 2008, Chaplain Zeyer's response to both requests was that Aguirre was not registered as Jewish!  Chaplain Zeyer's response was inconsistent with the chaplain's earlier approval of Aguirre's change in religious status and the warden's confirmation of the change according to prison computer records dated August 8, 2008.  These inconsistent responses were unfortunate and undoubtedly caused Aguirre understandable frustration.  They do nothing, however, to change the conclusion that Aguirre failed to exhaust all available administrative remedies before filing the instant action.

(4:08 CV 2365)

available administrative remedies, he or she must follow the procedures and policies of the facility in which he or she is housed.  *See e.g.*, *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) ("[T]he PLRA exhaustion requirement requires proper exhaustion.").

In order to determine whether Aguirre has satisfied the PLRA exhaustion requirement, the Court reviews the prison's administrative remedies and compares them with Aguirre's allegations contained in the second amended complaint, along with the supporting documentation attached to both parties' briefs.

> **B.** **The Prison's Grievance Policy**

Chaplain Zeyer attached to the motion to dismiss the facility's grievance policy, which is labeled "Policy 14-5 INMATE/RESIDENT GRIEVANCE PROCEDURES."  *See* ECF No. 15, Ex. 1.  The purpose of these procedures is stated as follows in policy 14-5.1: "To establish procedures for inmates/residents to formally file complaints about facility conditions, treatment, policies, and procedures.  To provide that such complaints are reviewed in a fair and expeditious manner and resolved in the best interest of both the inmate/resident and the facility."  ECF No. 15, Ex. 1 at 8.

Prior to filing a formal grievance, an inmate must "utilize the informal resolution process."  ECF No. 15, Ex. 1 at 9.  The informal resolution process at Aguirre's facility calls for an inmate to make a written or oral request to the staff member concerning the issue.  ECF No. 15, Ex. 1 at 9.  If the inmate's concern is not resolved through the informal process, then the inmate may file a formal grievance with the Grievance Officer utilizing Form 14-5A.  ECF No. 15, Ex. 1 at 11.  If the matter is not resolved at this stage of the grievance process, then the

-10-

(4:08 CV 2365)

inmate may appeal.

The facility's appeal process consists of three tiers: First, the inmate may appeal the decision of the Grievance Officer to the Warden. Second, if still not satisfied, the inmate may appeal to the Contract Monitor. If still dissatisfied, the third tier permits the inmate to make a final appeal to the Director DC Department of Corrections. ECF No. 15, Ex. 1 at 12-13. Although policy 14-5 does not specifically state, it appears that upon exhaustion of the above outlined procedure, an inmate may then file a civil action in federal court.

**C.      Aguirre Failed to Exhaust the Facility's Grievance Procedures[3]**

There is no dispute that the facility housing Aguirre had a documented grievance procedure of which Aguirre was aware. The issue is whether Aguirre properly availed himself of those grievance procedures.

Aguirre filed an informal grievance using the "inmate request to staff member" form on July 9, 2008, requesting that his religious status be changed from Catholic to Jewish. *See* ECF No. 18, Ex. A at 10. He did <u>not</u> also request participation in the kosher meal program. Chaplain William Zeyer approved Aguirre's religious status change on July 9, 2008, the same day it was submitted. *See* ECF No. 18, Ex. A at 10. After Aguirre had successfully changed his religious status to Jewish, he was denied participation in the kosher meal program. As a result of these

---

[3] The Court disagrees with some of the Defendant's recitation of facts and characterizations of the "grievance" forms Aguirre submitted. Nonetheless, the Court concurs with the ultimate determination that Aguirre did not exhaust the administrative remedies available to him as enumerated in Policy 14-5.

-11-

(4:08 CV 2365)

denials, he filed a formal grievance — using the correct form, Form 14-5A[4] — with the

Grievance Officer requesting approval for the kosher meal program.  *See* ECF No. 18, Ex. B at

12.  The Grievance Officer denied Aguirre's formal grievance because his "informal resolution

attempt did not deal with [his] meal status."  ECF No. 18, Ex. B at 12.  The Court agrees.

At this point in the grievance process, Aguirre had failed to properly follow the facility's

grievance procedure because his *formal grievance* alleged a complaint which he had not first

tried to resolve *informally*.  It appears to the Court that Aguirre had incorrectly presumed that a

change in his religious status to Jewish automatically entitled him to participation in the kosher

meal program.  The Grievance Officer's report and decision advised Aguirre that changing his

religious status did not also change his meal status:

> Your informal resolution attempt did not deal with your meal status.  Your
> informal attempt asked to change your religious status from Catholic to Judaism
> [sic], which has been done.

*See* ECF No. 18, Ex. B at 12.  Thus, Aguirre's Complaint should be dismissed according to the

PLRA's exhaustion requirement for his failure to exhaust properly the available administrative

remedies.

Even assuming *arguendo* that Aguirre had properly followed the prison's grievance

---

[4] Throughout Defendant's pleadings and the affidavits of Jillian Shane, it is asserted that
the form Aguirre used to file his *formal* grievance was the form used for *informal* grievances.
The Court disagrees.  Based upon the Court's review, Aguirre used the correct form, Form 14-
5A, to submit his *formal grievance* and the correct *Inmate Request to Staff Member* form to
submit his informal resolution requests.  The problem was that the subject matter complained of
in the two types of forms was different and resulted in mis-communications and
misunderstandings.  And, ultimately, Aguirre's failure to properly exhaust the established
grievance process of which he was obviously aware.

(4:08 CV 2365)

process to this point, continued analysis reveals that Aguirre did not follow the remaining procedures outlined in Policy 14-5. Aguirre submitted an appeal to the Warden, but did not appeal that denial to the Contract Monitor or the Director DC Department of Corrections[5] *before* filing the instant action with this Court. Aguirre's failure to exhaust the available administrative remedies by properly following the facility's established procedures of which Aguirre was obviously aware necessitates the dismissal of his sole remaining cause of action. Given the circumstances underlying this case, the Court believes the dismissal should be with prejudice.

## III.  Conclusion

Based on the foregoing analysis, the Court concludes that Aguirre failed to exhaust the administrative remedies available to him prior to filing the current action as required by the Prison Litigation Reform Act. Accordingly, the Court finds that no genuine issue of material fact exists, pursuant to Rule 56(c).

---

[5]  Aguirre appealed the Warden's decision to the Regional Administrative Offices of the BOP. *See* ECF No. 18, Ex. C at 14. The BOP rejected this appeal as "not appealable to the BOP" for not using the facility's grievance procedures. *See* ECF No. 18, Ex. C at 14.

-13-

(4:08 CV 2365)


Therefore, the undersigned recommends:  (1) *sua sponte* converting Defendant's Rule

12(b)(6) motion into a motion for summary judgment pursuant to Federal Rule of Civil

Procedure 12(d), (2) granting the motion for summary judgment, and (3) dismissing the sole

remaining cause of action in Plaintiff's Second Amended Complaint with prejudice.


  June 5, 2009                                                *s/ Benita Y. Pearson*
Date                                                 United States Magistrate Judge


## **OBJECTIONS**

Objections to this Report and Recommendation must be filed with the Clerk of Courts
within ten (10) days of receipt of this notice.  Failure to file objections within the specified time
waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947
(6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111
(1986).